**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY | : | |
| 650 Peachtree Street | : | |
| Atlanta, GA  30308 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. _____ |
| SHEET METAL, AIR, RAIL AND | : | |
| TRANSPORTATION WORKERS – | : | |
| TRANSPORTATION DIVISION | : | |
| 24950 Country Club Blvd., Suite 340 | : | |
| North Olmsted, OH  44070 | : | |
| | : | |
| and | : | |
| | : | |
| BROTHERHOOD OF LOCOMOTIVE | : | |
| ENGINEERS AND TRAINMEN | : | |
| 7061 East Pleasant Valley Road | : | |
| Independence, OH  44131 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Norfolk Southern Railway Company ("NSR") brings this action to enforce the mandatory dispute resolution procedures of the Railway Labor Act, 45 U.S.C. § 151 *et seq*. ("RLA").  A dispute has arisen between Plaintiff and two of the unions representing its employees concerning the interpretation and application of their collective bargaining agreements ("CBAs").  Under the RLA, disputes concerning the interpretation or application of collective bargaining agreements are subject to mandatory arbitration, and strikes over such disputes are prohibited.  In violation of their obligation to arbitrate this dispute, the unions have maintained that their disputes with NSR constitute a "major dispute" and threatened to strike

NSR.  A "major dispute" is a term of art under the RLA by which a union claims that it has the right to strike in protest of a carrier's actions.  A strike against NSR would deprive shippers and the public of essential freight transportation service and cause severe and irreparable harm.  The effects of a strike against NSR would be particularly acute at the present time due to the strains imposed on the United States and global transportation supply chains as a result of the COVID-19 pandemic.  Accordingly, NSR has brought this action seeking: (1) a declaratory judgment that the disputes between the parties over the interpretation or application of their CBAs is a "minor dispute" under the RLA, 45 U.S.C. § 151, et seq.; (2) a declaratory judgment that the unions' threats to engage in a strike or other job action over these minor disputes violate their obligation to arbitrate such disputes under Section 3 of the RLA, 45 U.S.C. § 153; and (3) a declaratory judgment that the unions' strike threats and ongoing refusal to conference violate their affirmative duty under Section 2 First of the RLA to make and maintain agreements and to settle all disputes involving the application of such agreements so as to avoid any interruption to commerce or to Norfolk Southern's operations, 45 U.S.C § 152 First.

## PARTIES

1.      Plaintiff NSR is a Virginia corporation with its principal place of business in Atlanta, Georgia, and is a "carrier" within the meaning of Section 1, First of the RLA, 45 U.S.C. § 151, First.  NSR currently operates a Class I railroad on a system-wide basis over 19,500 route miles in 22 states, the District of Columbia, and the Province of Ontario, Canada.

2.      Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD") is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working

conditions, including negotiation and administration of CBAs.  SMART-TD is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth.  SMART-TD represents Norfolk Southern employees in the craft or class of "Conductors and Trainmen," which consists of Conductors, Brakemen and Switchmen.  SMART-TD was formerly known as the United Transportation Union ("UTU").

3.      Defendant Brotherhood of Locomotive Engineers and Trainmen ("BLET" and, together with SMART-TD, the "Defendant Unions") is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of CBAs.  BLET is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth.  BLET represents Norfolk Southern employees in the craft or class of "Locomotive Engineers."  BLET was formerly known as the Brotherhood of Locomotive Engineers ("BLE").

## JURISDICTION AND VENUE

4.      Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§ 1331, 1337.

5.      Plaintiff and the Defendant Unions are all actively doing business within the Northern District of Illinois.

6.      Venue over this action properly lies in the Northern District of Illinois under 28 U.S.C. §§1391(b)(1) and (2).

## THE RLA PROHIBITS STRIKES OVER MINOR DISPUTES

7.      NSR and the Defendant Unions have been parties to a series of collective bargaining agreements ("CBAs"), which together with terms implied therein, including past

practice and management prerogative, have established the rates of pay, rules and working conditions of employees represented by the Defendant Unions.

8.     Under the Railway Labor Act, disputes concerning the interpretation or application of collective bargaining agreements are subject to mandatory arbitration.  Section 3 of the RLA requires such disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment).  45 U.S.C. § 153.  A union may not strike over a minor dispute. *Bhd. of R.R. Trainmen v. Chicago R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957).

9.     Disputes over the interpretation or application of RLA collective bargaining agreements are known as "minor disputes."  The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute.  Rather, the term "minor dispute" reflects that the nature of the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation or change to an agreement.

10.     Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."  *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n.*, 491 U.S. 299, 303-05 (1989).

## DESCRIPTION OF THE MINOR DISPUTES

11.     Two overlapping disputes have arisen between NSR and the Defendant Unions concerning the interpretation or application of their CBAs.

12.     Most NSR freight trains currently operate with a two-member crew comprised of one engineer, who operates the locomotive engine, and one conductor, who is

responsible for the train and for on-the-ground movements such as throwing switches and applying handbrakes.

13.     NSR engineers are qualified to work as conductors and must maintain seniority as conductors.  NSR has a decades-long practice of calling engineers to protect their conductor seniority by filling temporary conductor vacancies.

14.     SMART-TD recently has taken the position that this longstanding practice constitutes a violation of Article 4(B) of the parties' 1984 Crew Consist Agreement, which generally provides that employees not covered by the Agreement will not be used to perform service assigned to employees who are covered by the Agreement.  No provision of the 1984 Crew Consist Agreement prohibits Norfolk Southern from calling engineers to serve as conductors, and in fact Norfolk Southern's practice under the 1984 agreement has been to call engineers to fill vacancies in conductor positions.

15.     NSR disputes SMART-TD's position as contrary to longstanding practice, as well as arbitral precedent and past claim settlements.  In 2016, after raising similar objections to NSR's use of engineers to fill temporary train service vacancies, SMART-TD General Chairman J.A. Houk acknowledged that further progression would be pursuant to the grievance and time claim provisions of the parties' Agreement, *i.e.*, that SMART-TD's objection raised a minor dispute, not a major dispute over which the union could strike.

16.     BLET recently has taken the position that NSR's longstanding practice of calling engineers to protect their conductor seniority constitutes a violation of the parties' 2015 Agreement, specifically Article V, Section 3 of the 2015 Agreement, which provides for the selection of job assignments on a weekly basis, and Article III of the 2015 Agreement, which

provides engineers with bonuses known as Professional Performance Incentive ("PPI") payments calculated as a percentage of their engineer earnings for each quarter.

17. NSR disputes BLET's position as contrary to longstanding practice, arbitral precedent and past claim settlements. With respect to each of the recent example of engineers being called to protect their conductor seniority in emergency circumstances cited by BLET, the affected engineers submitted time claims for the difference in pay, *i.e.*, handled their claims as minor disputes, and NSR promptly addressed each claim.

18. Similarly, the one conductor cited by SMART-TD as affect by NSR's calling of engineers to fill temporary conductor vacancies on an emergency basis submitted a penalty claim, *i.e.*, handled his claim as a minor dispute, and NSR promptly addressed the claim.

19. In a prior dispute over the discipline of an engineer for refusing to protect his conductor seniority, the neutral arbitrator expressly found that the engineer "was obligated to protect his seniority" and any dispute over the propriety of the call should have been handled through the parties' grievance process. *BLE and Norfolk & W. Ry. Co.*, Pub. L. Bd. 4417, Award 32.

20. The current dispute over NSR calling upon engineers to protect their conductor seniority constitutes a "minor dispute" as that term is used under the RLA. The dispute arises out of the interpretation or application of existing agreements with the Defendant Unions concerning rates of pay, rules and working conditions. And, NSR's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."

21. There exists a real, live, and ripe controversy between NSR and the Defendant Unions over whether their disputes concerning NSR's calling engineers to protect their conductor seniority in emergency circumstances constitutes a major dispute, which would

entitle the Defendant Unions to strike, or a minor dispute, which must be resolved pursuant the parties' Agreements and the dispute resolution processes of Section 3 of the Railway Labor Act, 45 U.S.C. § 153.

## UNLAWFUL STRIKE THREAT

22.     By letter sent on August 10, 2021 (erroneously dated June 18, 2021), SMART-TD General Chairman D.W. Phillips informed NSR of SMART-TD's position that an engineer being called to protect his conductor seniority was a violation of the parties' agreement.

23.     By letter dated August 19, 2021, NSR responded to Mr. Phillips stating that any disagreement as to the interpretation and application of the parties' agreement was a minor dispute and confirming the parties' agreement to meet to discuss the matter.

24.     NSR Director, Labor Relation, John J. Muskovac, and Mr. Phillips met on August 26, 2021 but were unable to resolve their dispute.

25.     Mr. Muskovac and Mr. Phillips met again on September 29, 2021, at which time Mr. Phillips announced that he refused to discuss the matter further and stated that he considered the parties' dispute to constitute a "major dispute."

26.     By letter dated August 11, 2021, BLE General Chairman Dewayne L. Dehart sent a letter to NSR citing instances of engineers being called to protect their conductor seniority in emergency circumstances, which Mr. Dehart characterized as a "material change to the agreement without negotiations and a Major dispute."

27.     By letter dated August 20, 2021, NSR responded to Mr. Dehart stating that any disagreement as to the interpretation and application of the parties' agreement was a minor dispute and confirming the parties' agreement to meet to discuss the matter.

28.     NSR and the BLET agreed to meet on August 31, 2021 but that meeting was postponed by agreement of the parties.  Mr. Dehart provided assurance that BLET would not exercise self-help, *i.e.*, strike, in the interim.

29.     Mr. Muskovac and Mr. Dehart met on September 29, 2021.  Mr. Dehart refused to review the arbitral precedent and time claims that NSR had assembled in preparation for the meeting.  Mr. Dehart refused to give assurances that BLET would not commence a strike.  Instead, he stated that he would seek the advice of counsel about taking "next steps under the RLA."

## COUNT I -- MINOR DISPUTE (SMART-TD)

30.     NSR incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 29 above.

31.     This Cause of Action arises under Sections 2 First and 3 of the Railway Labor Act, 45 U.S.C. §§152 First, 153.

32.     There exists a current, live and ripe controversy that warrants declaratory and injunctive relief from this Court, namely whether the dispute between the Defendant Unions and NSR over the use of engineers to fill conductor temporary vacancies in emergency situations constitutes an RLA major dispute entitling the Defendant Unions to strike or a minor dispute subject to the mandatory arbitration procedures of Section 3 of the RLA.

33.     NSR has a collective bargaining agreement with SMART-TD, which remains in full force and effect.  This agreement, together with other established working conditions, set forth the terms and conditions of employment of NSR's employees represented by SMART-TD.

34. NSR contends that its labor agreement, as properly interpreted, does not prohibit NSR from calling engineers to protect their conductor seniority in emergency circumstances.

35. SMART-TD disputes NSR's interpretation of the applicable collective bargaining agreement, and maintains that NSR may not call engineers to protect their conductor seniority in emergency circumstances.

36. The dispute between SMART-TD and NSR over calling engineers to protect their conductor seniority is a minor dispute under the RLA, and thus subject to mandatory arbitration. The nature of the dispute is one that arises out of the interpretation or application of the parties' collective bargaining agreement, and NSR's position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

37. SMART-TD's threat to strike NSR over the instant dispute violates its duties under the RLA to pursue and exhaust the exclusive, administrative remedies for minor disputes which are set forth in Section 3 of that Act, including final and binding arbitration. The RLA precludes strikes, work stoppages, or other forms of self-help over minor disputes.

38. NSR has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with the defendants.

39. NSR has exhausted all available remedies under the RLA to prevent the unlawful activity and has no adequate remedy at law.

40. As to each item of relief sought herein, greater injury will be inflicted on the public and NSR if such relief is denied than will be inflicted upon the defendant by the granting thereof.

## COUNT II -- BREACH OF SECTION 2 FIRST (SMART-TD)

41.     NSR incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 40 above.

42.     This Cause of Action arises under Section 2 First of the RLA, 45 U.S.C. §152 First.

43.     Section 2 First imposes an affirmative duty on the parties:

> to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. §152 First.

44.     SMART-TD has breached its duty under Section 2 First to maintain its existing collective bargaining agreement with NSR by threatening to strike NSR over defendant's dispute with NSR regarding calling engineers to protect their conductor seniority in emergency circumstances.

45.     A strike by SMART-TD against NSR would cause substantial disruption to NSR and to the national freight transportation system.

46.     NSR has been willing at all times to comply with its duties under Section 2 First and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with defendant.

47.     NSR has exhausted all available remedies under the RLA to prevent the unlawful activity and has no adequate remedy at law.

10

48.     As to each item of relief sought herein, greater injury will be inflicted on the public and on NSR if such relief is denied than will be inflicted upon defendant by the granting thereof.

## COUNT III -- MINOR DISPUTE (BLET)

49.     NSR incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 48 above.

50.     This Cause of Action arises under Sections 2 First and 3 of the Railway Labor Act, 45 U.S.C. §§152 First, 153.

51.     There exists a current, live and ripe controversy that warrants declaratory and injunctive relief from this Court, namely whether the dispute between the Defendant Unions and NSR over the use of engineers to fill conductor temporary vacancies in emergency situations constitutes an RLA major dispute entitling the Defendant Unions to strike or a minor dispute subject to the mandatory arbitration procedures of Section 3 of the RLA.

52.     NSR has a collective bargaining agreement with BLET, which remains in full force and effect.  This agreement, together with other established working conditions, set forth the terms and conditions of employment of NSR's employees represented by BLET.

53.     NSR contends that its labor agreement, as properly interpreted, does not prohibit NSR from calling engineers to protect their conductor seniority in emergency circumstances.

54.     BLET disputes NSR's interpretation of the applicable collective bargaining agreement, and maintains that NSR may not call engineers to protect their conductor seniority in emergency circumstances.

55. The dispute between BLET and NSR over calling engineers to protect their conductor seniority in emergency circumstances is a minor dispute under the RLA, and thus subject to mandatory arbitration. The nature of the dispute is one that arises out of the interpretation or application of the parties' collective bargaining agreement, and NSR's position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

56. BLET's threat to strike NSR over the instant dispute violates its duties under the RLA to pursue and exhaust the exclusive, administrative remedies for minor disputes which are set forth in Section 3 of that Act, including final and binding arbitration. The RLA precludes strikes, work stoppages, or other forms of self-help over minor disputes.

57. NSR has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with the defendants.

58. NSR has exhausted all available remedies under the RLA to prevent the unlawful activity and has no adequate remedy at law.

59. As to each item of relief sought herein, greater injury will be inflicted on the public and NSR if such relief is denied than will be inflicted upon the defendant by the granting thereof.

## COUNT IV -- BREACH OF SECTION 2 FIRST (BLET)

60. NSR incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 59 above.

61. This Cause of Action arises under Section 2 First of the RLA, 45 U.S.C. §152 First.

62. Section 2 First imposes an affirmative duty on the parties:

12

to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. §152 First.

63.     BLET has breached its duty under Section 2 First to maintain its existing collective bargaining agreement with NSR by threatening to strike NSR over defendant's dispute with NSR regarding calling engineers to protect their conductor seniority in emergency circumstances.

64.     A strike by BLET against NSR would cause substantial disruption to NSR and to the national freight transportation system.

65.     NSR has been willing at all times to comply with its duties under Section 2 First and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with defendant.

66.     NSR has exhausted all available remedies under the RLA to prevent the unlawful activity and has no adequate remedy at law.

67.     As to each item of relief sought herein, greater injury will be inflicted on the public and on NSR if such relief is denied than will be inflicted upon defendant by the granting thereof.

## PRAYER FOR RELIEF

WHEREFORE, Norfolk Southern respectfully requests that the Court grant the following relief:

1.     Issue a Judgment declaring that the present dispute between NSR and the Defendant Unions concerning NSR's calling of engineers to protect their conductor seniority in

emergency circumstances is a "minor dispute" under the RLA, and is subject to the compulsory and exclusive arbitration mechanisms set forth in section 3 of the RLA, 45 U.S.C. § 153;

2.      Issue a Judgment declaring that Defendant Unions' threat to engage in a work stoppage or strike against Norfolk Southern over the aforesaid minor dispute violates the RLA by seeking to circumvent the mandatory and exclusive authority of the National Railroad Adjustment Board;

3.      Issue a Judgment declaring that, by threatening to engage in a work stoppage or strike and by refusing to conference with NSR, Defendant Unions have breached their duty under Section 2 First of the RLA to make and maintain agreements and to settle all disputes through the RLA's mandatory dispute resolution/arbitration procedures;

4.      Order Defendant Unions, jointly and severally, to pay the costs of these proceedings, including reasonable attorneys' fees; and

5.      Grant NSR such other and further relief as the Court may deem proper and just in the circumstances.

Respectfully submitted,

/s/ Julie L. Trester
JULIE L. TRESTER
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7960 (phone)
(312) 878-2020 (fax)
jtrester@cozen.com

and

ROBERT S. HAWKINS (pro hac vice pending)
ANDREW J. ROLFES (pro hac vice pending)
JOSEPH P. SIRBAK, II (pro hac vice pending)

COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215)665-2015 (phone)
(646)461-2097 (fax)
rhawkins@cozen.com
arolfes@cozen.com
jsirbak@cozen.com